We are ready to hear arguments in United States v. Alfred. We're ready to hear from the appellate. Good morning your honors and may it please the court. My name is Kathleen Shen and I represent the appellate Mr. Melvin Alfred. The challenged memes were not intrinsic to the offense and the district court's contrary ruling was an abuse of discretion. Evidence is intrinsic if it is single criminal episode or if it's a necessary preliminary without which the offense can't be understood and that's not true of the memes. The years-old posts were not inextricably intertwined with or part and parcel of the 2018 chats with G-baby and the district court abused its discretion by concluding that they were. The district court's conclusion was based on two subsidiary findings. First that any woman type person who Mr. Alfred communicated with could readily access the memes and would be likely to do so and second that he was using them to convey his brand or to say what he was about in 2018. Well on your access point and maybe even more preliminarily to that could you tell us which of the memes you're really disputing here that was a little unclear to me? Sure your honor and I understand the confusion so the objection was to the introduction of any historical meme evidence so the argument pertains to all of the memes and the best place in the ripple volume and that attachment contains several memes. I don't believe all of those were submitted. I think the summary is at record volume. I wrote this down but I think it's record volume one 269 and that's the motion to exclude that was filed right before trial. I think that omits a few of the memes but we did renew the objection as those memes were. Exhibits six and seven are but exhibit 46 is not challenged. So we did make the same argument that none of these memes were intrinsic and that was made at the outset before the government identified specifically which memes were going to be introduced at trial and so the ruling were challenging would affect the admissibility of all of the meme evidence. But if they weren't admitted who cares? Right so all of the memes that were admitted at trial are the subject of this appeal were objected. Yes thank you. Well there were some memes that I didn't think you were objecting to that had pictures of Mr. Alfred with like money. I thought you were just objecting to the memes that I have them behind government trial exhibit six. There's a bunch of memes that seem to be related more to prostitution directly than the ones that were just him with material goods and it didn't seem to me that there was objection to all of the memes. Am I confused? I understand your confusion. I think the clearest place to see that the objection pertains to all of and so this is you know so first they file this notice that they're going to use historical social media posts as 404b. We object to the 404b notice. They withdraw the 404b notice and say it's all intrinsic and so then you know what I'm talking about is the pleading we file it's at volume one record 152 and they say you know there we're objecting to any historical social media being used as intrinsic to the offense. Now a lot of our arguments are specific to what we're calling the memes so those are the not the pictures of Mr. Alfred specifically but you know screenshots from videos with or from movies with text superimposed on top of it and so that really is some of the arguments are specific to those posts. Let me ask you this because in exhibit six and seven are you saying that your objection was to all of the memes that came in so you did not repeat as to a specific exhibit the basis for that objection? Your honor so before any of the specific exhibits were identified we took the position that none of this meme evidence was intrinsic and then in one of the pleadings I just discussed the one at 269 there was a motion to exclude specifically regarding exhibits six and seven and then at trial additional memes did end up coming in that weren't part of exhibit six and eight and at that point we did renew our objection specifically stating you know we object for all the same reasons we have objected to the other meme evidence. So we believe we've preserved the arguments with respect to all of the historical memes and that this appeal because we're challenging the district court's pre-trial ruling that they're all intrinsic that it would cover all of those as well and so just to get back to that but it only makes sense for you to be challenging those memes that were admitted at trial yes your honor why would we care about the others we wouldn't would we no no we're talking about the memes that were admitted so we're talking about exhibit six and seven and possibly exhibit 46 yes okay that's it all right thanks and so the district court's reasoning first was that all of these memes were easily accessible to anybody who talked to Mr. Alfred on tagged but the only evidence that was before the district court when it made that ruling was that the the memes were accessible to g-baby or agent tangerman so there wasn't any evidence that they were accessible to anybody else that used the website or chatted with Mr. Alfred let alone that they would be likely to look at them and that's important let me interrupt as i understand it um they're on the home page um you could click on these pictures and you could click through you could click and immediately see a gallery of all of the available memes that were there and then you could click and pull up any of them that you wanted is that correct it's correct that tangent or g-baby could do that there wasn't any evidence about whether any other users would have been able to do but there wasn't any evidence that he limited other users either was there uh no but as the proponent of the government of the evidence it was the government's burden to show that this that its theory of admissibility was at least supported by the evidence and and the second um fine would you have to to follow on what you just said would would the government have to show that more than g-baby could access this i mean the district court's theory of admissibility um depended on this being accessible to other people that he you know his logic was any person who talked to um out mr alfred would be able to see these memes and then that brings me to the second part of its finding which is that um mr alfred was using these three-year-old memes uh to communicate what his brand was in 2018 so effectively every time he chatted with someone you know these memes because they were accessible were part of that chat so they were brand communications um in 2018 and let me ask you this is it not true that all they had to do was just click uh and the memes came up it's true that agent tangerman was able to access the memes that way now as i said we don't there isn't any evidence about how other users would have been able to see mr alfred's memes um and the district court found that anybody who chatted with him would have been able to see them and that that's one of the reasons he concluded that these were part of his brand that he was using these old posts um that he had posted three years earlier but just failed to delete that they were effectively contemporaneous communications of quote what he was about at the time he talked to g baby in 2018 and that's also uh an erroneous finding now the government argues that mr alfred's tag page was like a storefront or it was like a brand page and the district court analogizes it to a storefront um but the government didn't actually present any evidence about that this is how mr alfred was using tag the only um anything sort of resembling evidence that was at the hearing was the prosecutor's own personal anecdote that she personally does do spring cleaning of her social media presence in order to cultivate the message she's sending to her you know users but that's that's not evidence and that's not evidence of how mr alfred was using tag in september 2018 um and the record actually weighs against the conclusion that these three-year-old posts were being used to cultivate his brand in 2018 you know as we've discussed they weren't on the main page you had to click through to a photo sub page and these are just a small portion of the 107 photos that are available in his account um and that's just not how a business builds its brand you don't have to click on the photo sub page of rb's facebook page to find out that they're a sandwich shop you don't have to look at you know eight or ten photos out of 107 photos posted to a professional athlete's website to figure out what sport he plays and you know this lack of evidence is really concerning because social media is a complex and evolving phenomenon you know platforms are used differently different people use the same platform differently and the way that is that a platform is used changes rapidly um and tagged in particular is a pretty obscure platform and the district court here said he was ignorant of how social media works um and so really this is not an area where we can you know allow the district court to make assumptions or to rely on experience or take notice it really is something where you need specific evidence of what's going on i mean i just wanted doesn't the court have specific evidence if the court says okay you see his what you would call his profile page but you also see at the bottom of that page from our record all of these things that you can click on now if you can access them that way what's wrong with the district court's order or ruling the district court's finding that mr alfred is actually using these in 2018 that he intends for people to click through and look at them depends on assumptions about how if they're still if they're still accessible which they are they're there right well the district court's actually it's likely that anyone who talks to him is going to look at them and that's there's no evidence of that that's an assumption that he's making um based on what he admits is an ignorance of how social media works generally and there's no evidence about how people are actually using tagged let me let me ask you this even if you're right and um he had to grant access to someone before they could see this information if he interacts with someone and then decides this is a good time to grant them access couldn't the court still consider whether the stuff to which they are granted access is intrinsic to his intent to recruit for prostitution well i even if you don't it available to everyone but you screen a little bit and and see who might be on the hook it's still intrinsic no i i don't believe that these historical posts are intrinsic even if they are accessible because it still depends on the district court's finding that in fact mr alfred expected people to look at these old posts that he expected them to click on his photos and look at these find these and then draw the conclusion that he's a pimp or that this is his brand in the government's speak and that's simply not supported by the evidence and i just briefly want to touch on the 403 issue i mean even if they are intrinsic and there's some probative value that probative value is low there's there these are old posts they were composed by someone else and they're jokes and whatever limited probative value they have is in this case far outweighed by the risk of unfair prejudice i mean first of all there is a high risk that they're going to be used for the propensity purpose that he's the kind of person who likes to demean women that he thinks pimping is cool that they're vulgar they're offensive and they're misogynistic and they also draw on um gangster rap culture on all of these things are things that could negatively impact the jury's attitude and cause it to reach a verdict independent of their probative value and then just finally you know their the evidence wasn't harmless this isn't a sufficiency test the government has to prove that you can be confident the jury would reach the same conclusion and first this evidence was central to the case it's the first thing they showed the jury um and they talked about it the government presented a lot of direct evidence of the enticement of this woman and the discussions that were held and the education of her to become a prostitute and to gain money to come to houston i mean that's all straight direct evidence and undisputed that evidence would be sufficient to reach the verdict but you should also consider that mr alfred's defense that there was substantial evidence supporting his defense that this was all a fantasy that king make bach was a persona that in real life he wasn't a pimp with a maybach deciding between rolls royces and lambos that he didn't have a car he had to borrow his mom's car he had to pawn his playstation to get a hundred dollars and bum a ride to the bus station i mean also that his favorite rapper was pimp c who's best known for his verse on big pimping that he is someone who comes from a world where pimping imagery is common but not meant and with all that in mind this court should harbor some doubts as to whether the jury would reach the same verdict without the unfair prejudice associated with these memes and conclude that because the district court abused its discretion admitting this evidence the evidence was not harmless and the conviction should be vacated thank you thank you i'm ready to hear from the government may it please the court elizabeth ford milani for the government the evaluated the possible inferences arising from the memes and the plausibility of the connection between the memes and the government's theory i'd like to go right to the district court's findings in this case at that pre-trial hearing the district court did not necessarily find that someone necessarily would look at the memes the district court talked about how they were available on his landing page and as all the evidence at trial showed uh tagged is how mr alfred conducted the crimes in this case that is the digital space that he attempted to recruit nicky or g baby and i think the fact that agent tangeman was able to view those memes gives rise to the reasonable inference that anybody else with whom mr alfred communicated could also view those memes um so in this way i also want to point out that uh the defendant is incorrect that the memes were in any way buried in the tagged profile as was explained the pre-trial hearing and as agent tangeman i believe explained at trial these were one click away from the defendant's main tagged profile picture well when you click you get a gallery right and there were a lot of pictures and things in that gallery and these are very small the memes are a very small subset of that gallery is that correct so i don't know that i would even agree with that if you count up um exhibit six exhibit seven and exhibit 46 that's something like 20 memes of 107 photos so i don't think that is a miniscule amount um in comparison to all the defendant's photos but i think it's important to think of you know 20 memes on this one particular topic shows that this is part of his brand that he is associating himself with the messages of those memes and i think that that was what the jury could consider and the court properly let the jury uh draw from those conclusions what they would in this case i also want to talk about the temporal gap here i don't dispute that the memes were posted three years before the chats with nicky or g baby in this case but the fact that those memes were still available three years later one click away from the main profile picture shows at least an inference of intentionality and i think that that can certainly be considered in connection with all of the evidence remember the memes were not the only indicia of pimping and prostitution on mr alfred's tagged page his name his profile name was king maybach as agent tangiment explained at trial king or crowns often have connection to the pimping and prostitution culture as well his tagged line which was on his main profile page said i like the way it feels but it's better when it pays the bills and those weren't the only notwithstanding the memes there were also photos of defendant ironing money defendant with expensive items so i think all this together can be understood as the brand the sales pitch that mr alfred is using when communicating with others online what about the unfair prejudice part of this i mean truthfully i the government really didn't need these memes you had plenty of evidence i always see that in these cases where you know you're not alone you're not alone judge mccue where i mean you've got an avalanche of evidence and then you put in something um for the cherry on the top that creates the issue on you know how much probative value do you really get out of these memes um in comparison to the risk of unfair prejudice they don't i mean i i mean i find the memes offensive i can see that a jury might find them offensive i think a couple reasons uh one is that you know the government has the highest burden of proof there is and so this sort of evidence which will help the government prove its case i don't think just um i don't think that in this scenario that should have been excluded on that point but i understand your point your honor um i think that this these memes were particularly probative of the business enterprise aspect of count two now the government had to prove that the defendant was engaged in sort of an ongoing activity not just a sporadic casual isolated incident and i think that cultivating this brand really refuted any sort of contention that this was not a business enterprise under count two and so i think that that's very important here and that was it had extreme probative value in that way not only that but the defendant's theory at trial was that this was all puffery this was a joke he was pretending to be a pimp because he thought who knows what he thought but this was pretend i think cultivating a three years before he reached out to nikki kind of shows the unreasonableness of that theory it's a long con if you will so i think it was also very probative in that way to refute the defendant's theory as for prejudice again i don't disagree that the memes were prejudicial but they weren't unfairly prejudicial because they did not have that undue tendency for the jury to decide the which was the same digital space again that he used to reach out to nikki and others showed that this was all a concentrated effort part of that business enterprise here and i think that the district court you know at the pre-trial hearing the district court was concerned about the possibility that these memes would mislead the jury in thinking that the defendant was violent for instance and so the district court properly tailored the memes that would be admitted at trial to make sure that those risks weren't present and i think that also shows the district court you know carefully exercised its discretion in that way recall seeing that in your brief it's a good argument but i don't think i ever saw it that that this evidence was needed to establish a business enterprise and you refer to count two i'm looking at the charges and we're talking about persuading and inducing an individual to travel interstate that's not a business that's just the purpose is a business enterprise under 18 usc 1952 right to engage in prostitution so so you see that as requiring more than the movement of one person so the facilitating prostitution count does require that business enterprise as an element and i believe that i talked about that let me pull it up for you your honor perhaps you did a facility in interstate commerce with the intent to facilitate promotion management establishment carrying out of an unlawful activity right to promote manage establish or carry out right and then on on page 17 of the answer brief your honor um unlawful activity in this context is a business enterprise and then previous cases from this court kendall and bernard have described that that business enterprise requires proof of continuing course of conduct not just sporadic or casual involvement again that's page 17 of the answer brief thank you certainly your honor counsel yes your honor i also note that you're arguing that if the memes were wrongfully admitted that that error would be harmless you're going to address in this argument yes your honor so i agree that this is not a sufficiency test the harmlessness under rule 52 isn't a sufficiency test but that doesn't mean that the weight and the strength and the power of the government's evidence doesn't play into the analysis um several cases including cases that have been cited by opposing counsel in this case talked about how any error was harmless i'd point this court to the facnicone case which was in the 11th circuit that's a somewhat similar case in that social media posts that really had not a lot to do with a bank robbery were admitted at that trial but the court said that that was air but harmless given just you know the overwhelming evidence in this case and i think the same could be true here you know the chats were the length the depth the detail the knowledge of mr alfred's association with the pimping and prostitution culture i think that any error was still harmless notwithstanding introduction of these memes other than count two i do want to caution against i don't mean to say that the memes were only probative on the second count they were also probative on count one for reasons that we've already talked about a bit and that was the um under 22 42 knowingly persuades induces entices or coerces anyone i think the fact that the defendant associated outwardly with this brand that this brand was available to agent tanjamin when he was communicating with him undermines or underscores mr alfred's intent when he was talking with nicky did he intend for her to actually travel in interstate commerce and act as a prostitute or was this instead all puffery again the fact that he had cultivating this brand this long con of three years i think undermined the argument that this was all puffery and that pertained to count one as well if there are any further questions that i can answer for the court under the 403 analysis i'm happy to do so but otherwise um i'd encourage the court to affirm thank you okay and i think the appellant used her time correct kathleen i think you used your time you're not you're on mute you're on mute if i have five seconds i have a point i can make in five seconds okay do it um so with respect to the business enterprise it has to be continuous and because these memes are from 2015 they can thank you thank you both for your arguments this morning this case is submitted